IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RADIAN ASSET ASSURANCE, INC.,                                          PLAINTIFF

v.                                        CIVIL ACTION NO. 3:13cv686 CWR-LRA

MADISON COUNTY, MISSISSIPPI,
acting by and through its duly
elected Board of Supervisors, and
the PARKWAY EAST PUBLIC
IMPROVEMENT
DISTRICT, acting by and through its
Board of Directors,                                                    DEFENDANTS

v.

ST. DOMINIC HEALTH SERVICE, INC.,
BARNETT PLACE PROPERTIES, LLC,
CURTIS WHITTINGTON, JANET
WHITTINGTON, JOHN FORD, and
TAMARA FORD                                              INTERVENOR-DEFENDANT

## MADISON COUNTY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Defendant, Madison County ("the County") and files its Motion for

Partial Summary Judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, as

follows:

## I.     INTRODUCTION

Radian Asset Assurance Co., ("Radian"), the insurer of the bonds used to fund the

construction of the roads and infrastructure in the Parkway East Public Improvement District

("the District"), filed this suit in an effort to avoid its clear and impending obligation to pay debt

service on the bonds it insured under the terms of the policy it provided.

The only connection that the County has to this matter is a contribution agreement with

the District, and the four corners of that document clearly and unambiguously define the

contours of the limited obligation of the County to provide funds for debt service.  Importantly, the agreement makes it clear that, as a condition precedent to the County's promise to pay, the District must perform all of its "covenants, agreements and obligations"[1] to the satisfaction of the County. Among those obligations are: the District's promise to pay "all costs and expenses to be incurred by Parkway East in the construction *and financing* of the District Project," including but not limited to "pay[ing] the debt service payments of principal of, premium, if any, and interest on any Bonds … it issues …;" and, "provid[ing] full reimbursement to the County, no later than two (2) years from the date the deficient Debt Service Payment is made, for the amounts the County provides to the paying agent, and/or the Bond trustee, pursuant to this Section …" The District has failed to meet these obligations; therefore, the County is under no obligation to continue making Debt Service payments on the bonds.

Every one of the pertinent documents involved in the bond issue (i.e. the preliminary official statement, the official statement, and the Trust Indenture), as well as the Mississippi Code[2] make it abundantly clear that the bonds are <u>not</u> backed by the full faith and credit of the County. Radian, realizing that it is likely going to be called on to perform its obligations under its insurance policy and pay Debt Service on the bonds very soon, filed suit in an effort to force the County to make Debt Service payments.  Radian did this despite the fact that it is apparent both by the plain terms of the contribution agreement and to *every other party involved* that the County is not obligated to make another contribution unless and until the District has met its obligation of repayment to the County within two years as is clearly defined in the contribution agreement. The clear and unambiguous language of the contribution agreement requires that the

---

[1] *Contribution Agreement*, [1-05], p. 3.
[2] Miss. Code Ann. § 19-31-23(4).

District fully reimburse the County for any payments within 2 years. To date, the District has not made any reimbursement to the County.[3]

Because the contribution agreement is clear and unambiguous that the District must reimburse the County within the two (2) year anniversary date of a contribution payment by the County and because the District has not yet made such a payment, the County has no obligation to continue making debt service payments and this Court should grant partial summary judgment for the County on this issue.

## II.   FACTS AND PROCEDURAL HISTORY

### A. Factual background.

In 2002, Madison County, Mississippi was a rapidly growing and populous county in which increased ease of transportation and the potential for commercial development along Interstate 55 were viewed as relatively sound and potentially lucrative investment decisions.[4]  In this pre-Katrina and pre-economic recession time, and a time in which securing municipal bonds for the purpose of creating infrastructure and development in Madison County was popular – as other public improvement districts were being created around this time in the County – landowners of 1,050 acres that would come to be known as Parkway East filed a petition with the Madison County Board of Supervisors to create the Parkway East Public Improvement District pursuant to Miss Code Ann., 19-31-1, *et seq.*

A board of directors was created for the District, and plans to create the four-lane, median-divided parkway began.  In January of 2005, the County approved the contribution agreement, a

---

[3] Excepted from this analysis is Radian's contention that the County's receipt of the so-called Landspan property constitutes reimbursement within the meaning of the Contribution Agreement. The question of whether or not, and to what extent, if any, the Landspan constitutes reimbursement is beyond the scope of the motions allowed in this preliminary stage of the proceedings. See ¶ 5(b) of the Case Management Order [39].
[4] Minutes of the Madison County Board of Supervisors Meeting held November 22, 2002, attached hereto as **Exhibit A**.

document defining the obligations of the County and the District with regard to Parkway East.[5]

On July 27, 2005, the County, through its duly elected Board of Supervisors and The District,

through its duly elected Board of Directors, formally executed the Contribution Agreement with

the following stated purpose:

> [T]he County and Parkway East desire to enter into this Agreement
> in order to memorialize their mutual understanding with respect to
> the joint participation of the County and Parkway East in the
> financing of public infrastructure improvements and facilities to be
> located within the County and Parkway East and necessary to serve
> the needs of the people of the County and Parkway East.[6]

The District financed the construction of Parkway East, "the Construction Project," through

municipal bonds secured by the District's levy of special assessments upon landowners in the

District pursuant to its powers as a special-purpose governmental entity under Miss. Code Ann.

§19-31-1, *et. seq*. and a trust indenture entered into on July 1, 2005 between the District and

Hancock Bank ("Series 2005 Bonds").

The Contribution Agreement defines the obligation of the County to make contributions to

debt service on behalf of the District in the section titled "County Contribution," which provides:

> Provided that the covenants, agreements and obligation of Parkway
> East as stated herein are performed and/or provided to the
> County's satisfaction, the County hereby agrees that in the event
> Parkway East fails, for any reason, to levy and/or collect (or have
> collected) a sufficient amount of Special Assessments from owners
> of land within Parkway East in order to satisfy any Debt Service
> Payment, the County shall advance to the paying agent, and/or the
> Bond trustee, the outstanding amount required to satisfy the
> deficient Debt Service Payment.  The parties also agree that, in the
> event of a sale of a parcel of land for taxes (pursuant to 19-11-33
> of the Act) upon which a Special Assessment was levied but not
> collected, the County shall be immediately reimbursed for the
> County's advance to such deficiency with the proceeds of such tax
> sale.  The amount of such reimbursement shall be equal to the

---

[5] Minutes of the Madison County Board of Supervisors Meeting held January 21, 2005, attached hereto as **Exhibit B**.

[6] *Supra* n. 1, p.2-3.

amount the County advanced to the paying agent, and/or the Bond trustee, pursuant to this Section 3, including any interest accrued thereon at the statutory rate. Notwithstanding the above, Parkway East hereby covenants and agrees to provide full reimbursement to the County not later than two (2) years from the date the deficient Debt Service payment is made, for the amounts the County provides to the paying agent, and/Or Bond trustee, pursuant to this Section 3, regardless of the source of the Parkway East funds to pay such reimbursement.[7]

The payment of regularly scheduled principal and interest on the 2005 Series Bonds is guaranteed by Radian pursuant to Financial Guaranty Policy Number FMLI-0101-05208-MS which was issued by Radian on July 27, 2005.[8] Radian's obligation to pay debt service on the 2005 Series Bonds is triggered if a shortfall remains after applying any required County contribution, any funds in the Debt Service Reserve Fund, and any remaining funds available as provided in the original indenture.

Unfortunately, the timing of the project could not have been worse. At about the same time that the special assessments came on line, the country fell into the grips of the greatest financial crisis since the Great Depression,[9] which stymied investment and growth. Because of the prevailing economic conditions, the District did not experience the kind of development necessary to allow the landowners to pay the special assessments, which crippled the District's ability to pay debt service from the start.

The District made a valiant effort to pay its own way, but eventually ran out of options. On October 24, 2011, the County made its first contribution under the terms of the Contribution Agreement by paying debt service in the amount of $374,021.00.  Pursuant to its obligations under the contribution agreement, the County made three more Debt Service payments: April 25,

---

[7] *Supra* n. 1, p.3-4, "*County Contribution.*"
[8] [1-10].
[9] See *Financial Crisis Inquiry Report*, http://fcic-static.law.stanford.edu/cdn_media/fcic-reports/fcic_final_report_full.pdf (last accessed 11/21/2014).

2012 in the amount of $464,376.60; October 24, 2012 in the amount of $518,401.44; and, April 16, 2013 in the amount of $676,514.19. On October 18, 2013, the County notified all concerned that it was declining to make any further debt service payments pursuant to the failure of the District to reimburse the County within two (2) years of a County contribution pursuant to the terms of the Contribution Agreement.[10] This litigation ensued.

### B. Procedural history.

Radian filed its *Complaint for Declaratory Judgment* against the County and the District on November 1, 2013 asking this Court to declare its rights and remedies stemming from the County's alleged failure to comply with the Contribution Agreement and the District's failure to comply with the Original Indenture and its Bylaws.  The County filed its *Answer and Affirmative Defenses to Radian's Complaint* on December 27, 2013,[11] and the District filed its *Answer and Affirmative Defenses to Radian's Complaint* on December 30, 2013.[12]  On January 16, 2014, St. Dominic Health Services filed its *Unopposed Motion to Intervene*, and an Order granting said motion was entered that same day.  The County's *First Amended Answer to Radian's Complaint* was also filed on January 17, 2014.

On February 10, 2014, Barnett Place Properties filed its *Unopposed Motion to Intervene*, and an Order granting the same was entered February 11, 2014.   Dr. Curtis and Janet Whittington and Dr.  John Ford and Tamara Ford filed their *Motion to Intervene* on February 20, 2014, and an Order granting the same was entered on February 25, 2014. The *Case Management*

---

[10] [1-33]; see letter from A. Michael Espy, Esq., attorney for the Madison County Board of Supervisors to Susan R. Tsimortos, trustee for the bonds.
[11] [14].
[12] [15].

*Order* was entered on February 24, 2014,[13] and the initial discovery phase, in which this motion is filed, was limited to the following topics:

> (i) The affirmative defenses of ripeness and standing raised by Madison County (the "County") and the Parkway East Public Improvement District (the "District") in their respective Answers;
>
> (ii) the legal interpretation of the Contribution Agreement as to whether the District's failure to reimburse the County within the 2-year anniversary date of a contribution payment by the County suspends or terminates the County's obligations under the Contribution Agreement, and whether the 2-year reimbursement period in the Contribution Agreement may be extended by operation of law.[14]

On October 21, 2014, the final day allowable under the Case Management Order, Radian filed its *First Amended Complaint*.[15]   On October 24, 2014, Radian filed its *Answer to the Intervenor's Counterclaim*,[16] and on November 3, 2014, the County[17] and the District filed their *Answers to Radian's First Amended Complaint*.[18] The District included in its *Answer to Radian's First Amended Complaint* a Counterclaim[19] against Radian for which Radian filed its Answer on November 4, 2014.[20]

## III.     AUTHORITY AND ARGUMENT

### A. Legal Standard.

"Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"[21]

---

[13] The current Case Management Order in place is the *Second Amended Case Management Order*.
[14] [39], §5(b).
[15] [159].
[16] [160].
[17] [162].
[18] [163].
[19] *Id.*
[20] [166].
[21] *Jones v. TV Minority Co.*, CIV.A.307CV513WHBLRA, 2008 WL 4279581 (S.D. Miss. Sept. 11, 2008) aff'd sub nom. *Jones v. Norfolk S. Co.*, 348 F. App'x 970 (5th Cir. 2009)(citing Fed.R.Civ.P. 56(C)).

"The United States Supreme Court has held that this language 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[22]   "[T]he party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact."[23]   "The movant need not, however, support the motion with materials that negate the opponent's claim."[24]  "As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim."[25]  "The nonmoving party must then go beyond the pleadings and designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (citation omitted).  If everything in the record demonstrates that no genuine issue of material fact exists, then summary judgment may be granted.  *Id.*

**B.  The Contribution Agreement is the sole source defining the only obligation of the County, and because the County has abided by the clear and unambiguous terms of the Contribution Agreement, summary judgment for the County is proper.**

*1.  Defining the obligation of the County.*

The Contribution Agreement is the only document needed to determine the obligations of the County.  Because the obligations of the County are contained solely within the four corners of the Contribution Agreement and because the District has failed to reimburse the County for any of its contributions, this Court should enter partial summary judgment for the County finding

---

[22] *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir.1988)).
[23] *Id.* (citation omitted).
[24] *Id.* (citation omitted).
[25] *Id.* (citation omitted).

that the County does not have a continuing obligation to contribute to debt service payments unless and until it has received full reimbursement within two years for previous contributions.

"When interpreting a contract, a court must first examine the four corners of that contract. If a contract's language is clear and unambiguous, then it must be effectuated."[26]  Moreover, "only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent."[27]  Finally, "the mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law."[28]  Therefore, because the Contribution Agreement is clear and unambiguous, this Court need not look beyond the plain meaning of its terms.

### 2.   The bonds are not secured by the full faith and credit of the County.

Radian seeks to force the County to continue paying debt service *ad infinitum,* which would in effect make the County a guarantor or co-obligor of the District on the bonds. Though Radian might try to persuade this Court that the County has obligated itself to the payment of Debt Service more so than it has, the law and the plain language of the Contribution Agreement establishes otherwise. Pursuant to Miss. Code Ann. §19-31-23(4), "all obligations issued by the district…shall not be secured by the full faith and credit of the state or the county or municipality that created the district."[29]  Every other document relative to the creation of Parkway East notes plainly that the County has not pledged its full faith and credit. For example, the first page of the Official Statement notes that:

THE  BONDS  ARE  LIMITED  OBLIGATIONS  OF  THE

---

[26] *Woodruff v. Thames*, 143 So.3d 546, 554 (Miss. 2014)(citing *Rotenberry v. Hooker*, 864 So.2d 266, 270 (Miss. 2003)).

[27] *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005).

[28] *Turner v. Terry*, 799 So.2d 25, 32 (Miss. 2001).

[29] Miss. Code Ann. §19-31-23(4). ""Except as may otherwise be provided by the district, all obligations issued by the district shall be negotiable instruments and payable solely from the levy of any special assessment by the district or from any other sources whatsoever that may be available to the district but shall not be secured by the full faith and credit of the state or the county or municipality that created the district."

DISTRICT PAYABLE SOLELY FROM AND SECURED BY THE PLEDGE AND ASSIGNMENT OF LIEN UPON THE PLEDGED REVENUES, INCLUDING ANY COUNTY CONTRIBUTION PAID BY THE COUNTY TO THE TRUSTEE, PURSUANT TO THE INDENTURE, AND *NEITHER THE PROPERTY, THE FULL FAITH AND CREDIT, NOR THE TAXING POWER OF THE DISTRICT, <u>MADISON COUNTY, MISSISSIPPI</u>, THE STATE OF MISSISSIPPI, OR ANY POLITICAL SUBDIVISION THEREOF, IS PLEDGED AS SECURITY FOR THE PAYMENT OF THE BONDS.*[30]

In its description of the Contribution Agreement, the Official Statement notes that "[t]he County's agreement to make payments under the Contribution Agreement does not constitute a general obligation or debt of the County."[31] Further, the Original Indenture notes the contingent nature of the County's obligation to pay where it defines the "Contribution Agreement" as "that certain Contribution Agreement between the issuer and the County dated July 27, 2005, whereby, among other things, the County covenanted to provide *(in certain instances)* the County Contribution."[32]

Radian's corporate representative, Glenn Davis, admitted in the 30(b)(6) deposition of Radian that Radian was fully aware that the County had not pledged its full faith and credit in support of these bonds.[33]  In fact, Davis testified on behalf of Radian that Radian could have demanded the County obligate themselves further before it issued the insurance policy on the Series 2005 bonds, but apparently chose not to do so.[34]  It is plain that the clear and unambiguous terms of the Contribution Agreement define the sole obligation of the County with regard to the

---

[30] *Official Statement*, [1-04], (capitalization in the original; emphasis added).
[31] *Id*. at p. 16, *Payments under the Contribution Agreement*.
[32] *Original Indenture*, [1-03], p. 4, (emphasis added).
[33] 30(b)(6) Deposition of Radian, p. 106, line 23 – p. 107, line 3. ("Q: (By Mr. Gholson): So at the time that the risk was being underwritten by Radian and up until that time the insurance policy was issued, Radian knew that this was not a full faith and credit obligation of Madison County, correct? A: Yes."); attached hereto as **Exhibit C**.
[34] *Id*., at p. 107, line 22 – p. 108, line 4. ("Q: (By Mr. Gholson): As a part of its underwriting of this risk, if Radian had evaluated this and said we're not doing this unless Madison County agrees that it's a full faith and credit obligation of the County, then that's something that Radian could have elected to do as part of this –the process, true? A: Yes."); see **Exhibit C**.

District and payment on the bonds at issue. Thus, no genuine issue of material fact remains about whether the only obligation and connection of the County, whatsoever, to Parkway East is contained within the Contribution Agreement.

> 3. *Radian's Underwriting Process.*

Before discussing the proper interpretation of the Contribution Agreement, it is important to understand the process by which Radian made its decision to issue an insurance policy on the Series 2005 Bonds.   Radian apparently contends that, despite the plain language of the Contribution Agreement to the contrary, the County had – and has – an unconditional obligation to pay the District's debt service.   In order to gain a better understanding of the flaws in that argument, it is important to recognize the wealth of information available to and reviewed by Radian during its underwriting process before it *voluntarily* decided to insure the bonds.

Recall, first, that the Contribution Agreement was in its complete and final form and had already been approved by the County in January of 2005, some five months before bond closing day in July of 2005. Importantly, it is apparent from a review of e-mail correspondence produced in discovery that Radian, specifically its underwriter James George, was included in conversations and discussions about the creation and content of the Contribution Agreement more than a month before issuing its commitment.[35] In its 30(b)(6) deposition, Radian representative Glenn Davis confirmed that "Radian, in choosing whether or not to undertake this risk, has to underwrite all of these documents and different obligations of everyone involved to make sure that it has a clear understanding of precisely what's going on in this particular case."[36] Radian admits that this was not the first time they had encountered a contribution agreement, and this was certainly not the insurer's first consideration of the risk involved in insuring municipal

---

[35] See, e-mail correspondence Bates No BSLLP-001355 and BSLLP-001347 attached hereto as **Exhibit D**.
[36] See **Exhibit C**, 30(b)(6) Deposition of Radian, p. 28, lines 8-13.

bonds.[37]  Davis further confirmed that "even when [Radian] issues a commitment letter, it has reserved its right to examine such other documents as may come up with respect to the transaction…and that would enable Radian to review all of the closing documents before deciding to enter into the transaction."[38]

Additionally, Davis explained that the document produced by Radian entitled "DocuShare Checklist"[39] is "a checklist for documents to be stored permanently in our database for transactions,"[40] and he affirmed that Radian had access to each of the listed documents well before its decision to insure the Series 2005 Bonds.  This DocuShare Checklist provides that Radian had access to the Official Statement,[41] Bond Closing Opinions, and other relevant documents during its underwriting process.   Moreover, Davis confirmed that Radian underwriters "would have been charged with understanding the nature of the risk as presented in the entirety of the [Official Statement]," which included a detailed description of the Contribution Agreement.[42] Pages fifteen through sixteen of the Official Statement provide descriptions of the Contribution Agreement, including explicit descriptions of the conditional nature of the County's obligation and the requirement of reimbursement by the District within two (2) years.[43]

Jet Hollingsworth, one of the bond attorneys for the Parkway East deal, was deposed by Radian on October 9, 2014. Hollingsworth affirmed that the "Contribution Agreement was

---

[37] *Id.* at p. 27, lines 3-8. ("Q: So by the time in 2005 that this particular transaction came around, Contribution Agreements were not … unfamiliar to Radian? A: As you've described Contribution Agreements, yes, they were not unfamiliar.").
[38] *Id.*, at 48, lines 7-16.
[39] See, DocuShare Checklist, attached hereto as **Exhibit E**.
[40] See **Exhibit C**, 30(b)(6) Deposition of Radian, p.77, lines 15-17.
[41] See also, *Id.*, at p.82, lines 19-25. (Q: "The final official statement. And this is a document that Radian would have had at its disposal for review before it issued the policy in question, correct, A: That's correct.").
[42] *Id.* at p. 84, lines 7-13. ("Q: That would include the nature of the risk encompassed in the description of the – of the Contribution Agreement as described in there, true? A: Yes.").
[43] *Supra* n 30, at p. 15-16.

already prepared well before Radian was involved."[44]  Mr. Hollingsworth explained the mindset of the County and the understanding of all those involved in the creation and issuance of insurance for the Series 2005 bonds regarding the County's intentions behind the choice of language in the Contribution Agreement, stating:

> [the County] was adamant that they didn't want the County to be on the hook for the life of the bonds.  They wanted it to be restricted.  Andy[45] was adamant about the two-year provision and the restriction of County's exposure with respect to that two-year provision.  And part of that whole concept was, we don't want, as a county, to stick our neck out there for any type of, you know, guarantee or overall – we did not want to do that.[46]

When asked about conversations he had prior to closing with James George, head underwriter for Radian on the Parkway East bond issue, Mr. Hollingsworth testified that he was certain the two discussed the conditional nature of the Contribution Agreement.[47]

Also, it is notable that Radian could, if it desired, require the County to make a stronger obligation or to guarantee the bonds before it agreed to provide insurance,[48] but Radian did not require any additional commitment from the County, even with the benefit of clear descriptions of the County's limited involvement.  Given that Radian – a sophisticated insurer of municipal bonds, with years of experience in these matters – had access to all of the pertinent documents (including the Contribution Agreement) well in advance of closing, had multiple conversations with the bond counsel who drafted the Contribution Agreement, and had both the power and opportunity to demand a stronger commitment by the County with respect to payment of Debt Service, any claims of ambiguity by Radian are easily seen as a desperate attempt to avoid the obligations it has under its insurance policy to make upcoming Debt Service payments to

---

[44] Deposition of Jett Hollingsworth, p. 37, lines 3-7; attached hereto as **Exhibit F**.
[45] Andy Taggart, Madison County Board member in 2005.
[46] See **Exhibit F**, Deposition of Jett Hollingsworth at p. 132, line 20 – p. 133, line 1.
[47] *Id*. at p. 38, lines 13-15.
[48] See **Exhibit C**, *Supra* n. 33.

bondholders.

4. *The two year reimbursement requirement.*

The "County Contribution" section of the Contribution Agreement is the relevant provision for consideration by this Court due to Radian's attempt to thwart its clear obligation to pay Debt Service. Two portions of this section are important for purposes of this motion: the fact that payment of Debt Service is conditioned on the County's satisfaction regarding the District's performance of its obligations under the Agreement and the two-year period in which the District must reimburse the County for all payments the County has made before the County will make another Debt Service payment. Though the "County Contribution" is provided in full in the fact section above, the notable portion regarding the conditional nature of the County Contributions – which Radian repeatedly chooses to omit when it quotes this section - is as follows:

> Provided that the covenants, agreements and obligation of Parkway East as stated herein are performed and/or provided to the County's satisfaction, the County hereby agrees that in the event Parkway East fails, for any reason, to levy and/or collect (or have collected) a sufficient amount of Special Assessments from owners of land within Parkway East in order to satisfy any Debt Service Payment, the County shall advance to the paying agent, and/or the Bond trustee, the outstanding amount required to satisfy the deficient Debt Service Payment.[49]

It is plain from this language that the County's obligation to pay is conditioned on its satisfaction with the District's performance under the Contribution Agreement. Moreover, the Official Statement, a document Radian admits was available for review as part of its underwriting file *before* it issued an insurance policy, plainly describes the Contribution Agreement, noting "the Contribution Agreement conditions the County's agreement to make payments thereunder on the District's compliance with the covenants, agreements, and

---

[49] *Supra* n. 1, at p. 3-4.

obligations of the District contained therein."[50]

The so-called "Reimbursement Provision" of the Contribution Agreement, though undoubtedly clear and plainly worded, has been a point of contention in Radian's efforts to avoid its clear obligation to pay Debt Service pursuant to the insurance policy it *knowingly* issued. Though its reasoning cannot and has not been logically explained, Radian contends that the reimbursement portion of the County Contribution section in the Contribution Agreement does not provide a time frame in which the District must pay back any County Contribution, and because allegedly no time frame is provided, Radian argues that a "reasonable time" should fill the gap. But here is what the reimbursement section actually says:

> Notwithstanding the above, Parkway East hereby covenants and agrees to provide full reimbursement to the County *not later than two (2) years from the date the deficient Debt Service payment is made*, for the amounts the County provides to the paying agent, and/or Bond trustee, pursuant to this Section 3, regardless of the source of the Parkway East funds to pay such reimbursement.[51]

Don Clark, Bond Counsel for the Series 2005 Bonds explained in his Deposition that for bond marketing purposes, the County was asked to fill payment responsibility for a limited and conditional time due to the potential for a gap where, if landowners did not pay special assessments, time would pass during which the District would not have income to pay Debt Service until that property for which landowners were not paying assessments could be sold at a tax sale. Mr. Clark explained the context of the creation of the two (2) year reimbursement provision to enhance marketability of the bonds stating, "the County was asked to agree to this two-year limited guaranty to bridge that gap, almost like a bridge loan if you would in more commercial terms."[52] Counsel for Radian and Mr. Clark further note the understanding that the

---

[50] *Supra* n. 30, at p. 16.
[51] *Id*. (emphasis added).
[52] Deposition of Don Clark, p. 20, lines 16-19; attached hereto as **Exhibit G**.

County would be repaid, continuing:

> Q.   And then since the assessments on the land were [liens] on the
> property --
> A.   Uh-huh (affirmative response.)
> Q.   -- when the property were sold one year, two years --
> A.   Uh-huh (affirmative response.)
> Q.   -- you know, whatever, that proceeds from that sale based
> upon the prior - - the land would be used to reimburse the County
> for its gap payment if you will?
> A.   Yeah, I believe that's correct, yes.[53]

When asked by Radian's counsel about the function of the two-year reimbursement

provision, bond counsel Jet Hollingsworth explained:

> Q:   [W]ith respect to the entire agreement is terminated,
> that if [the District] didn't make the two -- within two years make the
> reimbursement payment, the agreement is terminated.
> A.   Yeah, I mean, I think -- I think this condition is clear right here.
> Q.   Okay.  Okay.  So your understanding is that if the reimbursement –
> pursuant to what the County wanted, that the reimbursement didn't occur,
> then they could walk away?
> A.   Well, the only alternative would be that the County would be on -- the
> County would be required to pay debt service for the life of the
> bonds, and that was never the intention of any of the parties….
> Q.   Okay.  So if they didn't make the reimbursement within the two years,
> then they would have no further obligation.  Is that what you're saying?
> A.   Well, that's what this (the Contribution Agreement) says.[54]

Though the operation of the two-year time frame in which the County must be reimbursed is

painfully clear to all parties involved in the creation and administration of Parkway East

"*except*" for Radian, Radian contends that the Contribution Agreement does not contain a time is

of the essence provision.  Specifically, Radian argues that because the document does not contain

the exact phrase "time is of the essence," the District cannot know the time limit by which it

must reimburse for contributions and thusly, a reasonable time (i.e. a time long enough that

---

[53] *Id.*, at line 22 through p.21, line7.
[54] See **Exhibit F**, Deposition of Jett Hollingsworth, P. 137, line 12 through p. 138, line 15.

development in the District would ensure Radian will not be called upon to pay Debt Service) must be inferred instead.

"In order for equity to regard contracts as 'of the essence,' one of two conditions must be satisfied."[55] The contract must either state that "time is of the essence" or "there must be a clear indication of intent by the parties to the same."[56]  Additionally, "in order for the trial court to determine the existence of a clear indication of the parties' intent with regard to time being of the essence, the trial court must consider all relevant circumstances surrounding the transaction."[57] Clearly, here, the intent of the parties to the Contribution Agreement is obvious both by the plain language – "two (2) years" - and by the "circumstances surrounding the transaction."[58]

Radian's argument with regard to the specificity of including the exact phrase, "time is of the essence," begs the question how any person ever knows to pay their mortgage or car note, for example.  Typically, these loan agreements do not include the exact words, "time is of the essence." Yet everyone understands the fact that if they do not pay their car note by the due date, the bank is going to come calling.  Would a bank be unable to foreclose upon a home or repossess a car simply because the words "time is of the essence" did not appear in the loan agreement? The obvious answer is no.  It is plain for anyone to see from the four corners of this agreement that the County must be repaid within two (2) years of its Contribution in order for the County to make any further debt service payments.

Even if you assume for the sake of argument that the plain language of this provision in the Contribution Agreement was not abundantly clear, the Official Statement, a document which Radian admittedly had in its possession for review during the underwriting process and *before* it

---

[55] *Ferrara v. Walters*, 919 So. 2d 876, 885 (Miss. 2005); see also, *Lee v. Schneider*, 822 So. 2d 311, 315 (Miss. Ct. App. 2002).
[56] *Id.*
[57] *Id.* at 886.
[58] *Id.*

decided to issue an insurance policy for which it collected $252,000 in premiums,[59] details the two (2) year reimbursement provision noting, "the District further agrees to provide full reimbursement to the County, *no later than two (2) years from the date the deficient Debt Service payment is made*, for the amounts the County provides to the Trustee, regardless of the source of the District funds to pay such reimbursement."[60] If Radian was truly unclear about the reimbursement provision after reading the Contribution Agreement, the language of the Official Statement resolved any confusion.

5.   *County Contributions and the District's failure to reimburse.*

The County made its first Contribution pursuant to the County Contribution provision of the Contribution Agreement by paying Debt Service in the amount of $374,021.00 on October 24, 2011.  Pursuant to its Agreement, the County made three more Debt Service payments: April 25, 2012 in the amount of $464,376.60; October 24, 2012 in the amount of $518,401.44; and, April 16, 2013 in the amount of $676,514.19.  Per the reimbursement provisions, the District was required to reimburse the County for the October 24, 2011 Debt Service payment no later than October 24, 2013.  To date, the District has not repaid the County for any contribution the County has made.[61] Accordingly, and pursuant to the Contribution Agreement, the County has not made any further Debt Service payments.  Because the District has clearly failed to abide by the terms of the Contribution Agreement with regard to reimbursement, this Court should grant partial summary judgment for the County.

**IV.   CONCLUSION**

The Contribution Agreement says this:

_____

[59] See **Exhibit C**, *Supra* n. 41.
[60] *Supra* n.30, at p. 15 (emphasis added).
[61] The County's acquisition of tax patent to the Landspan property, a parcel within the District, is still before this Court. The question of whether, and to what extent, the Landspan property constitutes "reimbursement" under the Contribution Agreement is an issue for another day.

> <u>Provided that the covenants, agreements and obligations of Parkway East as stated herein are performed and/or provided to the County's satisfaction</u>, the County hereby agrees that in the event Parkway East fails, for any reason, to levy and/or collect (or have collected) a sufficient amount of Special Assessments from the owners of land within Parkway East in order to satisfy any Debt Service Payment, the County shall advance to the paying agent, and/or the Bond trustee, the outstanding amount required to satisfy the deficient Debt Service Payment … Notwithstanding the above, <u>Parkway East hereby covenants and agrees to provide full reimbursement to the County, no later than two (2) years from the date the deficient Debt Service Payment is made, for the amounts the County provides to the paying agent, and/or the Bond trustee, pursuant to this Section 3, regardless of the source of the Parkway East funds to pay such reimbursement</u>.

The language is as plain as the nose on your face, yet Radian is trying desperately to convince one and all that the agreement doesn't say what it says. One need look no further than Radian's Amended Complaint for proof of Radian's motivation. In paragraph 29, Radian quotes the operative parts of the Contribution Agreement, *but they conspicuously omit the very first part of Section 3*, thus: "Provided that the covenants, agreements and obligations of Parkway East as stated herein are performed and/or provided to the County's satisfaction …" What Radian did in their Amended Complaint is precisely what they would have this Court do: ignore the conditional nature of the agreement, and make the County a guarantor of the bonds.

The conditional nature of the Contribution Agreement – and the terms upon which the County's performance was conditioned – was made abundantly clear to all on the front end, well before the bonds were issued. Now, nearly ten years later, Radian wants a do-over. They want this Court to reform an agreement that they are not even a party to. Radian's day of reckoning is coming soon. In a few months, they will likely be called on to shell out money for debt service on these bonds – which is exactly what they contracted to do, and charged a hefty premium for. Now they don't want to pay. Radian perceives that the County is a "deep pocket," and they want the County to pay, but the Contribution Agreement does not support their position. Their only

hope is to persuade the Court that the simple language of the Contribution Agreement does not mean what it says.

Take a moment and consider where Radian is coming from: they had the benefit of the Contribution Agreement – along with every other document in this transaction, all of which describe the County's obligation as conditional – for weeks before they decided to issue this policy. They had their team of Ivy League lawyers perusing each document, parsing every word and winnowing the meaning of each phrase, no matter how obscure. They admittedly could have hired Mississippi counsel, if for any reason the obvious meaning of the Contribution Agreement under this state's law was beyond their ken.[62] They had a highly trained credit committee to consider the business aspects of the deal and assess the risk to the company. The credit committee met and voted multiple times on this very project.[63] They could've said no at any point. They could have insisted on changes to the documents.[64] They could have refused the risk unless their changes were made.[65] Instead, they charged a quarter of a million dollars in premium,[66] thinking that they'd probably never be called on to pay. Now that the worst has happened, they are trying desperately to find a way out. Radian's reluctance to honor their policy is not a reason for the Court to try to make this agreement something that it is not.

WHEREFORE, PREMISES CONSIDERED, Madison County respectfully requests that this Court grant its Motion for Partial Summary Judgment, finding that the Contribution Agreement is clear and unambiguous; that the Contribution Agreement requires the District to reimburse the County within two years of any contribution by the County under the Agreement; that the reimbursement obligation of the District is a condition precedent to any obligation of the County

---

[62] See **Exhibit C**, 30(b)(6) Deposition of Radian, p. 72, line 24 – p. 73, line 23.
[63] *Id*. at p. 45, line 19 – p. 46, line 25.
[64] *Id*. p. 107, line 22 – p. 108, line 5.
[65] *Id*. at p. 48, lines 7-10.
[66] See Radian 2641, attached as **Exhibit H**.

to make contributions under the Agreement; and, that for so long as those contributions remain

unpaid by the District, the County has no further obligation to make contributions pursuant to the

Agreement.

RESPECTFULLY SUBMITTED this the 21st day of November, 2014.

MADISON COUNTY, MISSISSIPPI

By:    __/s/Robert D. Gholson_____
                    Its Attorney

**OF COUNSEL:**

Mike Espy, (Ms. Bar No. 5240)                     Robert D. Gholson, (MS Bar No. 4811)
Mike Espy, PLLC                                          Ryan J. Mitchell, (MS Bar No. 100026)
317 E. Capitol St., Ste. 101                           GHOLSON BURSON ENTREKIN &
Jackson, Mississippi 39201                            ORR, P.A.
Telephone:  (601) 355-9101                           535 N. 5th Avenue
Facsimile:  (601) 355-6021                            Laurel, Mississippi 39440
Email:  mike@mikespy.com                            Telephone:  (601) 649-4440
                                                                    Facsimile:  (601) 649-4441
                                                                    Email:  gholson@gbeolaw.com
                                                                    Email: mitchell@gbeolaw.com

*Attorneys for Madison County, Mississippi*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert D. Gholson, one of the attorneys for Defendant, Madison County, Mississippi, hereby certify that I have this day filed the foregoing document with the Clerk of the Court using ECF System which sent notification of such filing to the following:


Alan W. Perry
Phillip S. Sykes
FORMAN, PERRY, WATKINS, KRUTZ & TARDY, LLP
City Centre, Suite 100
200 South Lamar St.
Jackson, MS  39201

John C. Speer
Jonathan E. Nelson
BASS, BERRY & SIMS, PLC
100 Peabody Place, Suite 900
Memphis, TN  38103
Attorneys for Plaintiff Radian Asset Assurance, Inc.

C. R. Montgomery
MONTGOMERY, MCGRAW & COLLINS, PLLC
P. O. Box 1039
Canton, MS 39046-1039
        Attorney for Defendant Parkway East Public Improvement District

W. Trey Jones
Joseph Anthony Sclafani
Lane W. Staines
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
Post Office Drawer 119 (39205)
Jackson, MS 39201
            Attorneys for St. Dominic Health Service, Inc.

THIS the 21st day of November, 2014.


/s/Robert D. Gholson
     Robert D. Gholson

22