IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RADIAN ASSET ASSURANCE, INC.,                                                PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:13cv686 CWR-LRA

MADISON COUNTY, MISSISSIPPI,
acting by and through its duly
elected Board of Supervisors, and
the PARKWAY EAST PUBLIC
IMPROVEMENT
DISTRICT, acting by and through its
Board of Directors,                                                          DEFENDANTS

v.

ST. DOMINIC HEALTH SERVICE, INC.,
BARNETT PLACE PROPERTIES, LLC,
CURTIS WHITTINGTON, JANET
WHITTINGTON, JOHN FORD, and
TAMARA FORD                                               INTERVENOR-DEFENDANT

## MADISON COUNTY'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM IN SUPPORT OF SAME

COMES NOW the Defendant, Madison County ("the County") and files its Response to

Plaintiff's Motion for Partial Summary Judgment, pursuant to Rule 56(a) of the Federal Rules of

Civil Procedure, as follows:

**I.     INTRODUCTION**

Madison County finds itself in the unusual position of asking the Court to do that which

Radian requested in its Motion: "we merely ask the Court to confirm that which the parties have

already agreed." To that point, the County agrees wholeheartedly with these statements in

Radian's briefing:

- "In this case, it is undisputed that the Contribution Agreement contains a provision that obligates the District to reimburse the County within two-years of the County making a Contribution Payment."[1]

- "On October 24, 2011, the County made its first contribution payment under the Contribution Agreement in the amount of $374,021.00 (the "October 2011 Contribution Payment")."[2]

- "[T]he District relied on three additional payments from the County under the Contribution Agreement: a. $464,376.60 on April 25, 2012 (the "May 2012 Contribution Payment"); b. $518,401.44 on October 24, 2012 (the "November 2012 Contribution Payment"); and c. $676,514.19 on April 16, 2013 (the "May 2013 Contribution Payment")."[3]

- "[T]he District had two years – up to and until October 24, 2013 – to reimburse the County."[4]

- "[T]he District has not reimbursed the County for any Contribution Payment – let alone the October 2011 Contribution Payment."[5]

To paraphrase Radian's briefing, "[t]hese statements [by Radian], by themselves, are dispositive of the issue."[6] But, Radian tells us, some other result must be reached simply because the County admits that the Contribution Agreement "remains in force as a viable legal document,

---

[1] [169], p. 21.
[2] *Id.* at p. 13.
[3] *Id.* at p. 14.
[4] *Id.* at p. 22.
[5] *Id.* at p. 16.
[6] *Id.* at p. 25.

irrespective of the County's decision to withhold shortfall payments under the same."[7] Not so. If and when the District has met its obligations to the County under the Contribution Agreement, and provided "full reimbursement" according to the terms and conditions thereof, the County will once again be on the hook for contributions. To that end, the Contribution Agreement remains a viable obligation, and the County has never said otherwise. But despite Radian's affinity for omitting the operative language, the Contribution Agreement means what it says: the County is obligated to pay *only if* "the covenants, agreements and obligations of Parkway East as stated herein are performed and/or provided to the County's satisfaction …"[8] Among those "covenants, agreements and obligations," as Radian explicitly agrees, is the obligation to reimburse the County. And, as Radian conveniently points out, the County has not been reimbursed.[9]

## II.  ARGUMENT

### a.  Legal Standard

"The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact."[10]  "A contested fact is 'material' when it has the potential to change the outcome of the case."[11]  "An issue is 'genuine' if 'the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.'"[12]  "In light of the facts presented by the nonmoving party, along with any

---

[7] *Id*; see also [173], ¶¶92-94.
[8] [1-05], p. 3, "County Contribution."
[9] [169], p. 22; ("The District had two years – up until October 24, 2013- to reimburse the County.  That did not and has not occurred").
[10] *Montgomery v. Mississippi*, 498 F. Supp. 2d 892, 897 (S.D. Miss. 2007)(citing  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).
[11] *Ginsburg 1985 Real Estate P'ship v. Cadle Co.,* 39 F.3d 528, 531 (5th Cir. 1994).
[12] *Montgomery v. Mississippi*, 498 F. Supp. 2d 892, 897 (S.D. Miss. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

3

undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment."[13]

### b.  Plaintiff's argument that it is owed a duty of good faith and fair dealing

As Plaintiff notes, "it is axiomatic under Mississippi law that '[a]ll _contracts_ carry an inherent covenant of good faith and fair dealing.'"[14]  The County fully agrees with Radian's pronouncement of state law and draws this Court's attention to the fact that Mississippi law does not provide for a duty of good faith and fair dealing owed to parties who are _not_ in privity of contract with one another. It is undisputed that the Plaintiff was not a party to the Contribution Agreement; thus the County and the Plaintiff are not in privity of contract.  Plaintiff makes an unsupported leap by arguing that the County owes it a duty of good faith and fair dealing due to the Contribution Agreement between the County and the District because it "benefits from the Contribution Agreement."[15]  Notably, Radian has failed to cite any sources for its argument because there is no authority for such a pronouncement.

In contrast, the Mississippi Supreme Court overturned a trial court's ruling that a duty of good faith and fair dealing was owed to a party lacking privity of contract with the Defendant stating, "without a contract, [a party] cannot maintain a claim for breach of duty of good faith and fair dealing."[16] And, the Mississippi Supreme Court held that a Plaintiff could not support its claim of breach of the duty of good faith and fair dealing due to lack of contract between the parties, noting: "Wells and Oliver, however, did not establish that American Bankers, which had

---

[13] _Id_. at 897, citing _Anderson,_ 477 U.S at 255.
[14] [169] p. 18.
[15] _Id._
[16] _Miss. Dept. of Envtl. Quality v. Pac. Chlorine, Inc._, 100 So.3d 432, 441 (Miss. 2012)(emphasis added).

no contract with them, should be held liable for a breach of the duty of good faith and fair dealing. The duty of good faith and fair dealing arises from the existence of a *contract* between parties."[17] (emphasis supplied by the court). And, as further evidence of how far removed Radian is from the Contribution Agreement, consider this: the Contribution Agreement was approved by Madison County on January 21, 2005.[18] The earliest mention of Radian in any of the documents was on or about June 20, 2005.[19] Thus, Radian (and indeed, insurance of any kind) was not a factor in the County's approval of the Contribution Agreement.[20]

Moreover, as noted in the County's *Motion for Partial Summary Judgment*, every party to the Parkway East deal, including the Plaintiff, was well aware of the intent that the County Contribution be only a temporizing measure in the event of a gap of time in which special assessments were insufficient to pay debt service, and this understanding is obvious from the plain terms of the Contribution Agreement.[21] But the plain language of the Contribution Agreement is not enough by itself – and we submit that it is – the undisputed proof from those involved confirm this intent. Don Clark, Bond Counsel for the Series 2005 Bonds explained in his deposition that for bond marketing purposes, the County was asked to help fill the gap where, if landowners did not pay special assessments, the District would not have income to pay Debt Service until the defaulted property could be sold at a tax sale. Mr. Clark explained the context of the creation of the two (2) year reimbursement provision to enhance marketability of the bonds stating, "the County was asked to agree to this two-year limited guaranty to bridge that gap, almost like a bridge loan if you would in more commercial terms."[22] Counsel for Radian

---

[17] *Am. Bankers' Ins. Co. v. Wells*, 819 So.2d 1196, 1207 (Miss. 2001).
[18] Exhibit B to [171].
[19] See Transaction Review and Cull Report, Attached hereto as **Exhibit "A."**
[20] Exhibit B to [171]; see also, [1-10] (Plaintiff's insurance policy was issued on July 27, 2005).
[21] **Exhibit "B,"** Deposition of Glenn Davis, p. 20, lines 16-19; see also, *Madison County's Memorandum in support of Motion for Partial Summary Judgment*, p. 15-16.
[22] *Id.* at, p. 20, lines 16-19.

and Mr. Clark further described the intent of the parties:

> Q.   And then since the assessments on the land were [liens] on the property --
> A.   Uh-huh (affirmative response.)
> Q.   -- when the property were sold one year, two years --
> A.   Uh-huh (affirmative response.)
> Q.   -- you know, whatever, that proceeds from that sale based upon the prior - - the land would be used to reimburse the County for its gap payment if you will?
> A.   Yeah, I believe that's correct, yes.[23]

Though the County disagrees with Plaintiff's assertion that it owes any duty whatsoever to Plaintiff, even if it arguably did owe a duty, the County has not breached it as it has acted in good faith.  The County, as a public entity, owes a duty to the citizens of Madison County to be good stewards of tax payer funds.  The County can only take those actions as required and allowed by the terms of the Contribution Agreement, and the Contribution Agreement provides that the County's obligations are conditioned on the satisfaction of the County regarding the District's performance of its obligations and covenants under the Contribution Agreement.[24] Thus, the County has not breached any duty of good faith arguably owed to any party by simply demanding that the District adhere to its obligations and covenants under the Agreement, which include paying debt service[25] as well as repaying the County.

Had the County stepped in to pay debt service without demanding that the District exhaust its available funds or despite the fact that the County has not been reimbursed according to the terms of the Contribution Agreement, the County would not have been acting in the best interests of the County or its taxpayers.  Moreover, Radian admitted – through its 30(b)(6) representative Glenn Davis – that the County would have satisfied its duty of good faith and fair

---

[23] *Id.*, at line 22 through p.21, line 7.
[24] [1-05].
[25] *Id.* at p. 1-4; ("Whereas, the Parkway East and its Petitioners that are potential beneficiaries of the District Project will (and/or their successors and assigns will) be responsible for the payment of a portion of the Reimbursed Costs due to the County…).

dealing as long as it abided by the terms of the Contribution Agreement.[26] And that is exactly what the County has done.

### c. Plaintiff's argument that the Contribution Agreement does not contain a time is of the essence provision

Radian argues that because the exact words, "time is of the essence" are not present in the Contribution Agreement, the two (2) year reimbursement provision is of no effect.[27] Despite the undisputed existence of the two (2) year reimbursement provision and understanding of all parties as to its effect, Plaintiff asks this Court to ignore the plain language and somehow look beyond the terms of the Agreement in reaching its conclusion. However, the language of the Contribution Agreement is plain and unambiguous;[28] thus, this Court need not look to any source other than the four corners of the Contribution Agreement to decide the question. While Plaintiff attempts to muddy the waters with various irrelevant issues, the established law makes clear that determination by this Court is as simple as applying the plain language of the Contribution Agreement.

"When interpreting a contract, a court must first examine the four corners of that contract. If a contract's language is clear and unambiguous, then it must be effectuated."[29] Again, as the terms of the Contribution Agreement are admittedly clear and unambiguous, this Court need not look beyond the agreement to make its determination. Moreover, "only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent."[30] Finally, "the mere fact that the parties disagree about the meaning of a contract does not make the contract

---

[26] 30(b)(6) Deposition of Glenn Davis, p. 173, lines 18-25, attached hereto as **Exhibit "B;"** ("Q: So long as the County abides by the terms and conditions of the Contribution Agreement, it has met its duty of good faith and fair dealing, has it not? A: Yes.").
[27] [169], p.19.
[28] Indeed, Radian makes no attempt to argue that the Contribution Agreement is anything other than clear and unambiguous.
[29] *Woodruff v. Thames*, 143 So.3d 546, 554 (Miss. 2014)(citing *Rotenberry v. Hooker*, 864 So.2d 266, 270 (Miss. 2003)).
[30] *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005).

ambiguous as a matter of law."[31] In its *own motion*, Plaintiff notes "it is undisputed that the Contribution Agreement contains a provision that obligates the District to reimburse the County within two-years of the County making a Contribution Agreement."[32] Alternatively, if this Court determined it proper to look beyond the clear and unambiguous terms of the Contribution Agreement, the understanding of all parties – including Plaintiff – about the meaning and function of the reimbursement provision still establishes that the County must be repaid within two (2) years. Therefore, because the Contribution Agreement is clear and unambiguous, this Court need not look beyond the plain meaning of its terms; however, even if this Court *did* look beyond the plain terms, all parties to this action agree that the two (2) year provisions necessitates repayment by the District within two (2) years of any County contribution.

Plaintiff and the County again agree as to the controlling law on the subject of time is of the essence provisions. But, in its interpretation of the *Ferrara* decision, Plaintiff disregards the applicable mandate that where "a clear indication of intent" is shown, courts shall regard time as of the essence in a contract.[33] In its affirmative *Motion for Partial Summary Judgment*,[34] the County provided indisputable evidence that the clear intent of the County in drafting and approving the Contribution Agreement with the District was to serve as a temporizing measure in the event that landowners within the District failed to pay special assessments sufficient that the District was able to pay debt service.[35] Jet Hollingsworth, one of the bond attorneys for the Parkway East deal, was deposed by Radian on October 9, 2014. Mr. Hollingsworth explained the mindset of the County and the understanding of all those involved in the creation and

---

[31] *Turner v. Terry*, 799 So.2d 25, 32 (Miss. 2001).
[32] [169], p. 21.
[33] *Ferrara v. Walters*, 919 So. 2d 876, 885 (Miss. 2005); see also, *Lee v. Schneider*, 822 So. 2d 311, 315 (Miss. Ct. App. 2002).
[34] [171].
[35] *Id.* at p. 14-18.

issuance of insurance for the Series 2005 bonds regarding the County's intentions behind the choice of language in the Contribution Agreement, stating:

> [the County] was adamant that they didn't want the County to be on the hook for the life of the bonds.  They wanted it to be restricted.    Andy [Taggart] was adamant about the two-year provision and the restriction of County's exposure with respect to that two-year provision.  And part of that whole concept was, we don't want, as a county, to stick our neck out there for any type of, you know, guarantee or overall – we did not want to do that.[36]

Moreover, in its 30(b)(6) deposition, Radian representative Glenn Davis noted that Radian underwriters had encountered contribution agreements in other deals, that underwriters were charged with understanding of the terms of the Contribution Agreement, and that, had Plaintiff believed it pertinent that the County be obligated beyond its conditional contribution as defined in the Contribution Agreement or desired clarification regarding the timing of the two year reimbursement provision, Plaintiff could have demanded those changes before issuing its insurance policy on the bonds.[37]  As Plaintiff and the County both agree about the applicable law regarding time is of the essence, and as it is indisputable that the clear understanding of all the parties to the Parkway East deal - including Radian - was that the County's obligation was and is conditional, no genuine issue of material fact remains. Thus, this Court should find that the County is not obligated to resume contributions under the Contribution Agreement while these reimbursements remain outstanding.

### d.  Plaintiff's argument that the parties' obligations under the Contribution Agreement should not be terminated

Plaintiff spends a considerable portion of its Motion arguing that the Contribution Agreement is not and should not be terminated.  The County wholeheartedly agrees.  Plaintiff's argument either misapprehends or mischaracterizes the function of the Contribution Agreement

---

[36] Exhibit F to [171], Deposition of Jett Hollingsworth, p. 132, line 20 – P.133, line 1.
[37] Exhibit C to [171], Deposition of Glenn Davis, p. 28, lines 8-13 and p. 27, lines 3-8. See also, [171] at pp. 11-12.

when it discusses the issues in terms of termination and material breach. Frankly, termination and material breach are irrelevant to the issues before the court. It's as simple as this. Pursuant to the plain and unambiguous terms of the Contribution Agreement, the County's obligation to perform – to pay the County Contribution - is suspended pending the District's performance of its obligation to reimburse County Contributions within two (2) years. The County has never argued that the failure of the District to repay within two (2) years constituted termination of the Contribution Agreement; moreover, the County has repeatedly acknowledged that it will once again have an obligation to make County Contributions as soon as the District reimburses the County in full.[38]

Plaintiff cites the *Wright* case for the proposition that failure to perform within an allotted time where a contract lacks a time is of the essence provision does not constitute a material breach.[39] Plaintiff asks this court to believe that the contract at issue in *Wright* consisted only of a provision stating that installation of a swimming pool should be completed within sixty days.[40] However, Plaintiff omits an integral aspect of the *Wright* Court's holding.

Importantly, the *Wright* Court clarified numerous times throughout its opinion that "the essence of the contract was that Wright would construct on the Stevens' premises a completed, usable, and serviceable swimming pool and that he would do so in a *timely and workmanlike manner*."[41] Again, the *Wright* Court noted its interpretation that the contract was for performance in a reasonable amount of time, stating, "[o]f the essence of Wright's contractual undertaking was that he would perform with *reasonable* dispatch,"[42] and "[t]he question before the jury was whether Wright's failure to complete the job within the 127 days between June 1 and October 6

---

[38] [159-76].
[39] [169], p. 23 citing, *Wright v. Stevens,* 445 So. 2d 791, 794 (Miss. 1984).
[40] *Id.*
[41] *Wright*, 445 So.2d at 792.
[42] *Id.* at 794.

constituted a breach of Wright's contractual obligation to perform his contract *within a reasonable time*."[43]

Clearly, the multiple timing provisions in the *Wright* contract are distinguishable from the sole provision describing time in Contribution Agreement. The essence of the *Wright* contract was that the swimming pool be completed in a reasonable amount of time.[44] The reimbursement provision of the Contribution Agreement, however, is clear and specific in its description of the required reimbursement by the District. Remember, even the Plaintiff admits that the two (2) year provision means precisely what it says.[45] There is no ambiguity in the terms of the Contribution Agreement. The attempt by the Plaintiff to distract this Court from the plain and unambiguous terms of the Contribution Agreement and the proper application of Mississippi law with regard to those terms is indicative of Plaintiff's desperate attempt to avoid its impending obligation to pay debt service - an obligation into which Plaintiff knowingly entered and for which it charged over $250,000.00 in premiums.[46]

Finally, Plaintiff argues that the County's acquisition of a forfeited tax land patent to the Landspan property is further evidence that non-payment within two (2) years is not a material breach of the Contribution Agreement. This argument is without merit. The County does not oppose crediting the District under the reimbursement provision if this Court later finds that the Landspan property represents "reimbursement" to the County under the Contribution Agreement. However, as neither party has or is prepared to offer evidence as to the value of Landspan, it is clear Plaintiff's argument as to reimbursement value for Landspan is premature.[47]

---

[43] *Id.*
[44] *Id.*
[45] [169], p.21; ("it is undisputed that the Contribution Agreement contains a provision that obligates the District to reimburse the County within two-years of the County making a Contribution Payment").
[46] Exhibit H to [171].
[47] [45], p. 3, par. 5(b).

### III.   CONCLUSION

Radian wants this Court to conclude as a matter of law that "time is not of the essence" to the reimbursement of the County, while incongruously saying that "the District had two years – up to and until October 24, 2013 – to reimburse the County."[48] They ask this Court to ignore the conditional nature of the County's obligation, but clearly admit it in their deposition:

> **10 Q. Okay. What, then, does Radian contend the**
> **11 meaning of the first phrase which begins with the**
> **12 word "provided" and ends with "satisfaction," what**
> **13 does Radian contend that means?**
> **14 A. That those conditions are -- that the**
> **15 conditions that follow are subject to that initial**
> **16 phrase.**
> **17 Q. The conditions that follow?**
> **18 A. Or the undertaking that follows is**
> **19 conditioned upon that proviso.**[49]

Radian seeks to excuse the failure of reimbursement as "non-material,"[50] but offers no explanation of how it is that a failure to pay back hundreds of thousands of dollars[51] since October 2011 is not material. Perhaps in the rarified atmosphere occupied by municipal bond insurers, a debt of over $2 million dollars is "non-material," but the citizens and taxpayers of Madison County would no doubt feel differently.

Following Radian's thread of logic would turn the Contribution Agreement on its head: it would require this Court to obligate the full faith and credit of the County, and make the County a guarantor and co-obligor of the District, when such is contrary to the plain language of the Agreement. It would require this Court to find that "two years" doesn't really mean "two years," but instead some amorphous number that may materialize in the future. It would require this

---

[48] [169], p. 22.
[49] 30(b)(6) Deposition of Glenn Davis, p. 114, lines 10-20, attached hereto as **Exhibit "B."**
[50] [169], p. 24.
[51] *Id.* at 22.

Court to ignore the "provided that" portion of the Contribution Agreement, just like Radian did in its Amended Complaint. It would require the Court to ignore the obviously conditional nature of the Agreement, and disregard practically every operative document in the bond transaction – as well as a Mississippi statute that says, *except as may be provided in a contribution agreement*, "neither the full faith and credit of the state nor the full faith and credit of any governmental unit of the state are pledged to the payment of the principal of or the interest on such bonds."[52]

What this Contribution Agreement provides is that the County must be paid back for its contributions within two years.[53] Failing in that, the County need not contribute further. To hold otherwise would be in derogation of the plain language of the Contribution Agreement and the law.

WHEREFORE, PREMISES CONSIDERED, Madison County respectfully requests that this Court grant deny Plaintiff's Motion for Partial Summary Judgment, finding that the Contribution Agreement is clear and unambiguous; that the Contribution Agreement requires the District to reimburse the County within two years of any contribution by the County under the Agreement; that the reimbursement obligation of the District is a condition precedent to any obligation of the County to make contributions under the Agreement; and, that for so long as those contributions remain unpaid by the District, the County has no further obligation to make contributions pursuant to the Agreement.

---

[52] Miss. Code Ann. §19-31-1, *et. seq.*
[53] [1-05].

RESPECTFULLY SUBMITTED this the 22nd day of December, 2014.

MADISON COUNTY, MISSISSIPPI

By:     /s/Robert D. Gholson
Its Attorney

**OF COUNSEL:**

Mike Espy, (Ms. Bar No. 5240)
Mike Espy, PLLC
317 E. Capitol St., Ste. 101
Jackson, Mississippi 39201
Telephone:  (601) 355-9101
Facsimile:  (601) 355-6021
Email:  mike@mikespy.com

Robert D. Gholson, (MS Bar No. 4811)
Ryan J. Mitchell, (MS Bar No. 100026)
GHOLSON BURSON ENTREKIN &
ORR, P.A.
535 N. 5th Avenue
Laurel, Mississippi 39440
Telephone:  (601) 649-4440
Facsimile:  (601) 649-4441
Email:  gholson@gbeolaw.com
Email: mitchell@gbeolaw.com

*Attorneys for Madison County, Mississippi*

14

## CERTIFICATE OF SERVICE

I, Robert D. Gholson, one of the attorneys for Defendant, Madison County, Mississippi, hereby certify that I have this day filed the foregoing document with the Clerk of the Court using ECF System which sent notification of such filing to the following:

Alan W. Perry
Phillip S. Sykes
FORMAN, PERRY, WATKINS, KRUTZ & TARDY, LLP
City Centre, Suite 100
200 South Lamar St.
Jackson, MS  39201

John C. Speer
Jonathan E. Nelson
BASS, BERRY & SIMS, PLC
100 Peabody Place, Suite 900
Memphis, TN  38103
Attorneys for Plaintiff Radian Asset Assurance, Inc.

C. R. Montgomery
MONTGOMERY, MCGRAW & COLLINS, PLLC
P. O. Box 1039
Canton, MS 39046-1039
Attorney for Defendant Parkway East Public Improvement District

W. Trey Jones
Joseph Anthony Sclafani
Lane W. Staines
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
Post Office Drawer 119 (39205)
Jackson, MS 39201
Attorneys for St. Dominic Health Service, Inc.

THIS the 22nd day of December, 2014.

/s/Robert D. Gholson
Robert D. Gholson