## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**RADIAN ASSET ASSURANCE INC.**                                                                         **PLAINTIFF**

**V.**                                    **CAUSE NO. 3:13-CV-686-CWR-LRA**

**MADISON COUNTY, MISSISSIPPI;**                                   **DEFENDANTS**
**PARKWAY EAST PUBLIC**
**IMPROVEMENT DISTRICT**

**ST. DOMINIC HEALTH SERVICES,**                        **INTERVENOR DEFENDANTS**
**INC.; BARNETT PLACE PROPERTIES,**
**LLC; CURTIS WHITTINGTON; JANET**
**WHITTINGTON; JOHN FORD;**
**TAMARA FORD**

## ORDER

Before the Court are cross-motions for partial summary judgment filed by Radian Asset Assurance and Madison County, Mississippi. Docket Nos. 167, 170. The motions are fully briefed and ready for adjudication.

**I.    Factual and Procedural History**

In 2002, Madison County attempted to spur economic development in a 1,050-acre area by creating the Parkway East Public Improvement District.

In 2005, the District issued bonds to finance improvements. The bonds were to be repaid by special assessments on the landowners within the District. Radian insured the bonds.

The subsequent collapse of the economy caused the District to fail. It was unable to attract the development necessary to make its bond payments.

Madison County had previously agreed to help cover the District's shortfall, at least to some extent. The scope of the contribution agreement between the County and the District is

hotly contested. The relevant language – presented here in three parts, for ease of reading – states the following:

> Provided that the covenants, agreements and obligations of Parkway East as stated herein are performed and/or provided to the County's satisfaction, the County hereby agrees that in the event Parkway East fails, for any reason, to levy and/or collect (or have collected) a sufficient amount of Special Assessments from the owners of land within Parkway East in order to satisfy any Debt Service Payment, the County shall advance to the paying agent, and/or the Bond trustee, the outstanding amount required to satisfy the deficient Debt Service Payment.
>
> The parties also agree that, in the event of a sale of a parcel of land for taxes (pursuant to Section *19-11-33* of the Act) upon which a Special Assessment was levied but not collected, the County shall be immediately reimbursed for the County's advance to such deficiency with the proceeds of such tax sale. The amount of such reimbursement shall be equal to the amount the County advanced to the paying agent, and/or the Bond trustee, pursuant to this Section 3, including any interest accrued thereon at the statutory rate.
>
> Notwithstanding the above, Parkway East hereby covenants and agrees to provide full reimbursement to the County, no later than two (2) years from the date the deficient Debt Service Payment is made, for the amounts the County provides to the paying agent, and/or the Bond trustee, pursuant to this Section 3, regardless of the source of the Parkway East funds to pay such reimbursement.

Docket No. 168-4, at 3-4.

To simplify, the first part means that if the County is satisfied with the District's performance, it will step in and pay the District's bonds if the District experiences an assessment shortfall. If the County makes such a payment, the second part means that the County can take the proceeds of tax sales to recoup the money it spent on bond payments. The third part means that the District has two years to reimburse the County for the County's bond payments.

When the District failed, Madison County made the District's bond payments between October 2011 and September 2013. The County then stopped, arguing that the contribution agreement required it to cover bond payments for only two years. As Madison County reads the agreement, it is now Radian's duty as insurer to step forward and repay the bonds.

2

Radian disagrees. It filed this suit seeking, among other things, a declaration that Madison County remains responsible for bond payments. The parties also differ on the meaning of Madison County's later receipt, from the District, of a large parcel of land called the "Landspan Property." In addition, a number of property owners within the District have intervened in this suit; they hope to minimize increases in their assessments.

The parties conducted some discovery and agreed to present these motions for partial summary judgment at a relatively early stage.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citation omitted). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quotation marks and citation omitted).

A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. Fed. R. Civ. P. 56(c)(1); *see Tran Enterprises, LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2010) ("With respect to an issue on which the nonmovant would bear the burden of proof at trial, if the movant for summary judgment correctly points to the absence of evidence supporting the nonmovant with respect to such an issue, the nonmovant, in order to avoid an adverse summary judgment on that issue, must produce sufficient summary judgment evidence to sustain a finding in its favor on the issue.").

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III. Discussion

### A. Substantive Law

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

In Mississippi, contract interpretation focuses on the plain language of the contract, "since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003) (citation omitted). The contract is to be read "as a whole, so as to give effect to all of its clauses." *Id.* (citation omitted).

If the contract is "unclear or ambiguous, the court should attempt to harmonize the provisions in accord with the parties' apparent intent." *Id.* (quotation marks and citation omitted). "[I]nternal conflict or uncertainty can provide the necessary condition precedent to find ambiguity." *Mississippi Farm Bureau Mut. Ins. Co. v. Walters*, 908 So. 2d 765, 769 (Miss. 2005) (citation omitted). The court, however, "is not at liberty to infer intent contrary to that emanating from the text at issue." *Royer Homes*, 857 So. 2d at 752 (citation omitted).

4

### B. Radian's Motion

Radian seeks three declarations: (1) that Madison County owes the District and all other beneficiaries of the contribution agreement a duty of good faith and fair dealing; (2) that the agreement does not contain a "time is of the essence" provision; and (3) that the agreement remains in effect despite the District's failure to reimburse the County within two years.

#### 1. Duty of Good Faith and Fair Dealing

Madison County says it owes Radian no duty of good faith and fair dealing as a matter of law because the parties are not in privity of contract, but proceeds to argue that it has acted in good faith as a matter of fact.

It is well-established that "[a]ll contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992) (collecting cases). "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Id.* (citation omitted).

Although privity of contract is usually required to invoke the duty of good faith and fair dealing, this court has previously permitted the intended third-party beneficiaries of a contract to sue for breach of the duty of good faith and fair dealing. *Lott v. Garner*, No. 5:06-CV-175-DCB-JMR, 2007 WL 2826965, at *1 (S.D. Miss. Sept. 25, 2007). This court has also said as much in the insurance context, concluding that "an insurance carrier owes a duty under its insurance policy to its insureds *and* to the intended beneficiaries of the insurance contract." *Blue Diamond, Inc. v. Liberty Mut. Ins. Co.*, 21 F. Supp. 2d 631, 633 (S.D. Miss. 1998) (citation omitted and emphasis added).

Radian argues that future motion practice will show it to be a third-party beneficiary of the contract because it represents the interests of bondholders. It is not seeking such a declaration

5

today, though, instead claiming it is "entitled to a judgment declaring that the County owes the District and all others benefitting from the Contribution Agreement a duty of good faith and fair dealing." Docket No. 182, at 3.

The Court will decline to take up Radian's invitation. Radian does not have standing to seek such a declaration on behalf of the District and "all others benefitting from the Contribution Agreement," a group which presumably could include every taxpayer in Madison County. If the parties actually dispute whether Madison County owes a duty of good faith and fair dealing toward Radian, and by extension all other bond insurance companies, they may engage in further motion practice at an appropriate time.

### 2. "Time Is of the Essence"

Madison County argues that the two-year deadline in the contribution agreement is entitled to respect. Radian does not disagree.

A brief review suggests that the parties are speaking past one another. Radian is correct that there is no "time is of the essence" provision in the contribution agreement, while the County is correct that the District's two-year reimbursement deadline is binding on the District. It is not clear what more needs to be said.

### 3. The Duration of the Contribution Agreement

The parties agree that the contribution agreement remains in effect. No judicial declaration is necessary on this point.[1]

For these reasons, Radian's motion is granted in part and denied in part.

---

[1] The continued effectiveness of the contribution agreement by itself has little bearing on the County's ongoing duty, or lack thereof, to make the District's bond payments. The same is true of the issue resolved immediately above, regarding the lack of a "time is of the essence" clause. These appear to be ancillary skirmishes surrounding the real battle addressed in Part C, *infra*.

### C. Madison County's Motion

The County argues that its duty to cover the District's bond payments lasts only two years. It derives this length of time from the third part of the contribution agreement, as presented and segmented above.

The two-year limit, however, refers to the amount of time the District has to reimburse the County. It does not apply to the County's obligation to make bond payments. The first part of the agreement contains no time limit on the County's obligation to make bond payments.

The County nevertheless believes that the two-year reimbursement period must be imported into the section discussing its obligation to make bond payments. It reasons as follows: (1) the County's agreement to make bond payments was conditioned on it being satisfied with the District's performance; (2) the District's inability to reimburse the County within two years resulted in the County being dissatisfied with the District's performance; and therefore (3) the County can stop making payments after two years.

The logic fails at step (2). The language of the agreement suggests that the District's insolvency cannot be a reason for the County to be dissatisfied. The County's duty to make bond payments is, in fact, *triggered* by the District's inability to pay. If the District's insolvency entitled the County to be dissatisfied, the County's agreement to make missed bond payments would have no meaning; it would never be reached.

It also would be unusual for a time limit in part three of the agreement to apply by implication to part one, given, among other reasons, the fact that part three opens with the words, "[n]otwithstanding the above." When this bond deal was being put together, the parties were represented by capable counsel. Nothing precluded the County from seeking to limit, in the first part, any advanced payments for a period of two years. Undoubtedly, there would have been

7

resistance from the other side. But such a limitation is not present. The amount of time the District has to reimburse the County is independent of the duration of the County's duty to make bond payments.

To all this, the County contends it cannot be forced to make bond payments "*ad infinitum*," since the agreement *also* recites that the bonds are not backed by the full faith and credit of the County. Docket No. 171, at 9. Radian concedes the latter but argues that the County must make bond payments as long as it has "sufficient unrestricted funds in its General Fund." Docket No. 179, at 32. That may be contradicted by the plain language of the contract, and, the Court notes, may cut against the very purpose of purchasing bond insurance, but it is not necessary to resolve that issue today.

Nor are other arguments raised by the parties, ranging from the County's acceptance of the Landspan Property to the adequacy of Radian's underwriting process, ripe for adjudication. It is enough at this juncture simply to say that the contribution agreement does not state how long Madison County agreed to cover the District's bond shortfall. The County agreed to make the District's bond payments for some period of time, but whether the parties contemplated payments of one year, two years, five years, or something else is not contained within the four corners of the contract and cannot be inferred by the Court. Additional proceedings are necessary to answer that question, whether in the form of a trial (given the fact dispute suggested by the briefing, but not before the Court today) or additional motion practice.

For this reason, Madison County is not entitled to partial summary judgment.

**IV.     Conclusion**

Radian's motion is granted in part and denied in part. Madison County's motion is denied.

**SO ORDERED**, this the 20th day of April, 2015.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE
